# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>**6420 ROSWELL ROAD, INC.**<br><br>Debtor. | CHAPTER 7<br><br>CASE NO. 17-56753-PWB |
| ANGIE LANCE,<br>KHADEEJAH AHMED AND<br>MILLER LEGAL, P.C.,<br><br>Movant<br><br>vs.<br><br>**6420 ROSWELL ROAD, INC.**<br><br>Respondent. | CONTESTED MATTER |

## CREDITORS' MOTION FOR RELIEF FROM
## THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362
## AND NOTICE OF HEARING

**COMES NOW** Angie Lance (Claimant No. 2); Khadeejah Ahmed (Claimant No.3), and Miller Legal, P.C. (Claimant No. 4), (collectively referred to as "Movant"), by and through the undersigned counsel, and hereby files this "Creditors' Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. §362" ("Motion"), and Notice of Hearing. In support of the Motion, Movants respectfully show the Court as follows:

-1-

1. This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

2. On April 12, 2017 ("Petition Date"), 6420 Roswell Road, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").\

## FACTUAL ALLEGATIONS

3. Debtor operated an adult entertainment club named Flasher in Sandy Spring, Georgia.

4. Movant Angie Lance was employed at Flashers.

5. Movant Khadeejah Ahmed was employed at Flashers.

6. Movant Miller Legal, P.C. represented Lance and Ahmed in an FLSA AAA arbitration proceeding for unpaid wages.

7. The AAA Arbitration proceeding resulted in the following awards:

> **Lance  $5,127.50**
> **Ahmed $46,237.50**
> **Miller Legal, P.C. $86,842.94**

See, Exhibit "1" hereto; Exhibit "2" hereto.

8.    On January 18th, 2017 the arbitral awards were confirmed, without any modification, by the Northern District of Georgia District Court in case NO. 1:13-CV-02757-RWS. See, Exhibit "3" hereto.

9.    The arbitral awards are now elevated to the status of a federal court judgment. *See, e.g.,* 9 U.S.C. § 13 (Under Federal Arbitration Act, judgment on award "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered").

10.    On February 16, 2017 Debtor filed a notice of appeal to the 11th Circuit Court of Appeals challenging the federal court Arbitration confirmation order.

11.    The appeal was docketed on February 17, 2017 and assigned Court of Appeals Docket **#:** 17-10742. No briefing schedule was entered.

12.    On April 12, 2017 Debtor filed a voluntary Petition under the Bankruptcy Code. The Petition halted the progress of the Appeal where it has remained to this day.

**Argument for Modifying and/or Lifting the Automatic Stay**

13. Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of the commencement or continuation of judicial process. 11 U.S.C. §362(a). "On request of a party in interest and after notice and hearing, the court shall grant relief from the stay … such as terminating, annulling, modifying, or conditioning such stay… for cause." 11 U.S.C. § 362(d).

14. Movant requests entry of an order modifying or lifting the automatic stay pursuant to 11 U.S.C. §362 for the sole purpose of pursuing the appeal in the 11th circuit.

15. Movant also requests that the stay be modified so that the 11th Circuit appeal may be finalized which will fix, i.e. liquidate, the claims of Movants against the Debtor's estate.

16. The Bankruptcy Code does not define "cause" for purpose of 11 U.S.C. § 362(d). A determination of whether "cause" exists is made on a case by case basis. *In re Aloisi,* 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001). However, "it is well-established that the existence of pending-litigation against the debtor in a nonbankruptcy forum may constitute cause." *In re Coachworks Holdings, Inc.,* 418 B.R. 490, 492 (Bankr. M.D. Ga. 2009) (J. Walker) (internal citations omitted). *See*

*also Sky Top Enters., LLC v. Citrus Tower Blvd. Imaging Ctr., LLC (In re Citrus Tower Blvd. Imaging Ctr., LLC)*, 460 B.R. 334, 339 (Bankr. N.D. Ga. 2011) (J. Diehl) (lifting the automatic stay to allow a civil suit to continue in another forum where a determination of the merits of the case was "critical" to the Chapter 11 case); Congress recognized this concept when drafting Section 362:

> It will often be more appropriate to permit proceedings to continue in their place of origin when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court form duties that may be handled elsewhere.

S. Rep. No. 989, 95th Cong., 2d Sess. At 50 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.

17.  In analyzing whether cause exists to allow litigation to continue in another forum, courts have applied a three part test taking into account (1) any "great prejudice" to either the bankruptcy estate or the debtor resulting from continuation of the civil suit (2) whether the hardship to the movant by maintenance of the stay considerably outweighs hardship to the debtor and (3) the creditor has a probability of prevailing on the merits. *Sky Top Enters., LLC*, at 339.   Actions which involve the rights of third parties will often be permitted to proceed in another forum.  *In re South Oaks Furniture,* 167 B.R. 307, 309 (Bankr. M.D. Ga 1994) (J. Walker) (allowing a state court action to proceed where it involved a non-debtor guarantor defendant). Foust v. Munson S.S. Lines, 299 U.S. 77, 87–88, 57 S.Ct. 90, 81 L.Ed. 49 (1936) (Supreme Court concluded that the "bankruptcy injunction" should have

been lifted to permit wrongful death suit to go forward since claimant only interested in establishing liability under insurance policy and since reorganization proceeding not adversely affected).

18. Here, relief from the stay under 236(d) is warranted because there is sufficient cause. Pursuing the Appeal will not impose any known "great prejudice" to Debtor or the estate.

19. There is no known hardship to Debtor for pursuing the Appeal it filed. To the extent there is any hardship Debtor can file a dismissal.

20. Additionally, Movant is highly likely to succeed on the merits of their case because obtaining a reversal of an arbitration confirmation order is unheard of except under the most unusual circumstances which are not present. "There is a presumption under the [Federal Arbitration Act ("FAA")] that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible." Johnson v. Directory Assistants, Inc., 797 F.3d 1294, 1299 (11th Cir. 2015) (quotation omitted). "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law.'" AIG Baker Sterling Heights, LLC v. Americans Multi-Cinema, Inc., 508 F.3d 995, 1001

(11th Cir. 2007).[1] Accordingly, all three factors weigh in favor of lifting the automatic stay.

21. Movant requests that the Court grant it relief from the automatic stay, instanter, without the necessity of any ten day stay, all as authorized by the provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3).

**WHEREFORE**, Movants request and pray for relief including entry of an order modifying, annulling and/or lifting the automatic stay pursuant to 11 U.S.C. §362, without limitation:

    **a.**    To permit the 11th Circuit Appeal to proceed uninterrupted against the Debtor for the purpose of determining liability and damages;

    **b.**    Granting Movant such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED this 27th day of October, 2020.

    */s/ Harlan S. Miller*
    Harlan S. Miller
    Georgia Bar No. 506709

---

[1] The final death knell to the appeal is the lack of any transcript of the arbitration proceeding so there is no evidence for the Appellate Court to review.

## Notice Of Hearing

A hearing on this motion will be held at 10:15 AM on November 18, 2020 via telephone, via AT&T conference call: Toll Free 888-684-8852; Code 1896529, followed by # key.

## Certificate of Service

I hereby certify that I have this day served a copy of the foregoing

**CREDITORS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362 AND NOTICE OF HEARING**

to Trustee Martha Miller by e-mail to mmiller@mmillertrustee.com and efiled to give notice to all parties of record.

Dated this 27th day of October, 2020.

*/s/ Harlan S. Miller*
Harlan S. Miller
Georgia Bar No. 506709

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Re: 01-15-0003-6576 | Re: 01-15-0003-6917 |
| In the Matter of Arbitration Between: | In the Matter of Arbitration Between |
| KHADEJAH AHMED | ANGIE LANCE |
| Claimant, | Claimant, |
| v. | v. |
| HARRY FREESE and 6420 ROSWELL ROAD, INC. d/b/a FLASHERS, | HARRY FREESE and 6420 ROSWELL ROAD, INC., d/b/a FLASHERS, |
| Respondents. | Respondents. |

### INTERIM AWARD

### March 21, 2016

The undersigned Arbitrator, having been duly sworn and having heard and carefully reviewed the evidence in this matter, hereby renders this Interim Award.

A hearing in this matter was held on December 17 and 18, 2016. Claimants, Angela Lance and Khadejah Ahmed, were represented by Harlan Miller, Esq. and Respondents (the club entity sometimes referred to as "Flashers") were represented by Herbert Schlanger, Esq. The parties submitted post-hearing briefs with their response thereto being timely filed on March 7, 2016.

Per the parties' requests, this Interim Award will briefly set forth the Arbitrator's determination with a short statement relative to the bases thereof.

### Statement of Claims and Summary of Procedural History

Claimants initiated their claims under the Fair Labor Standards Act, 29 U.S.C. § 2001 *et. seq* ("FLSA"). In bringing their claims, Claimants sought a determination that they were "employees" of Respondents (as opposed to independent contractors as originally claimed by Respondents); that Respondents had "willfully" violated the FLSA; and that they were entitled to liquidated damages, attorney fees and costs. Claimants also sought to recover so-called house fees and tip-outs which they paid in connection with their work at Flashers.

In respect of the predicate questions whether the statute of limitations was tolled by Ms. Amhed's opting into a prior pending action and whether the Claimants were non-exempt employees

20704596v.1



covered by the FLSA, the parties briefed and the Arbitrator held a telephonic hearing with counsel concerning both issues. Initially the Arbitrator found that Ms. Ahmed's opting into the prior pending purported collective action did toll the statute of limitations beginning August 19, 2013. In addition, during the telephonic hearing, Respondents reaffirmed that they had abandoned any contention that the Claimants were independent contractors and instead stipulated that Claimants were "employees" covered by the FLSA. That stipulation was memorialized by the Arbitrator on November 23, 2015. That decision provides in part as follows:

> "In the hearing on the 17th [of November], the Respondents stipulated solely for the purposes of these arbitrations that Claimants are "employees" (as opposed to independent contractors) covered by the FLSA. Accordingly, the central issue of these arbitrations is whether Claimants have received all payments to which they are entitled to as FLSA covered employees."

Thus, Respondents expressly stipulated and agreed and the Arbitrator ruled that for purposes of this arbitration, the Claimants are "employees covered by the FLSA". That stipulation and ruling bars any later claims in this matter by Respondents that the Claimants were not covered by or subject to the FLSA; that Flashers was not an enterprise engaged in interstate commerce such that it was not subject to the FLSA; and that Claimants are not entitled to be paid minimum wage for hours worked at Flashers.

<u>**Respondents' Contention That Claimants Were Paid Minimum Wage for All Hours Worked**</u>

On the merits, Respondents primarily rely on one basic argument—that as per the Department of Labor's ("DOL") December 27, 1993 guidance letter, their minimum wage obligations to Claimants were fully satisfied from table dance fees paid by customers directly to the Claimants. Respondents contend that in no work week did either of the Claimant's payments from table dancing total less than the number of hours worked at Flashers times the minimum wage of $7.25 per hour.

The core problem with this argument is that Respondents abjectly failed to comply with the terms of the DOL's 1993 letters. Under those letters, in order for table dancer fees to be applied against dancers' minimum wage obligations, the club had to set the prices of table dancer and the payment process had to be structured such that, among other things, in the first instance those table dance fees were property of the clubs.

Respondents, never complied in any respect with the DOL's 1993 guidance. As to establishing a specific set amount per table dance, Flashers did no such thing. While it did apparently suggested a minimum of $10 per table dance, it appears that there was no specific fee or rate established or enforced by Flashers. More importantly, these dancer payments, which were paid by customers directly to the dancers, were always treated by the Respondents and the dancers as the sole property of the dancers and no one else. These fees were never collected by the club or accounted for in its revenue or receipts. In no respect did Flashers take custody or control over these table dance fees, whether constructively or otherwise. Respondents simply ignored the provisions of the 1993 DOL letters and apparently incorrectly concluded that if a dancer likely received in table dance tips at least $7.25 an hour, then that satisfied their obligation under the FLSA. Respondents' argument must be rejected. None of the table dance payments or other tips received by the Claimants constitute wage payments under the FLSA.

20704596v.1

## Willfulness and Good Faith Under the FLSA

Under the FLSA, where a violation is found to be willful, the statute of limitations commences three years from the effective date of a claimant's filing of notice of consent to join the action. To establish willfulness, the claimant may show that the respondent acted with reckless disregard as to whether the conduct at issue was prohibited by the FLSA. Such recklessness under the governing Federal Regulations and case law exists where the respondent has failed to make reasonable inquiry or investigation into whether its conduct comports with the FLSA.

Here, the issue is whether Respondents made reasonable inquiry or investigation into whether Claimants could be lawfully classified as "independent contractors" under the FLSA or whether its pay structure comported with the FLSA. I find that to the extent Respondents made any inquiry whatsoever, they made no reasonable inquiry or investigation. Indeed, the Respondents admit that they made no inquiry or investigation whatsoever following the 1993 DOL investigations of Atlanta adult entertainment clubs—a DOL investigation in which representatives of Flashers were expressly advised by the DOL that dancers such as Claimants were, for FLSA purposes, covered FLSA employees and entitled to minimum wages. I thus find that the Respondents' conduct was willful under the FLSA and that the statute of limitations period with respect to these Claimants is three years (less 20 days the statute was not tolled) back from August 19, 2013.

As to liquidated damages, where the trier of fact finds for the employee-claimant, an award of liquidated damages is for all practical purposes mandatory absent proof by the employer that it acted in "good faith." To demonstrate "good faith", an employee must, among other things, undertake reasonable efforts to investigate its potential FLSA liability.

Again and as discussed above, Respondents presented no evidence that carries this burden. Thus Respondents have failed to prove that they acted in "good faith" relative to their obligations under the FLSA. Claimants are entitled to have their damages liquidated; that is doubled.

## Minimum Wage Damages

Respondents failed to keep accurate records from which minimum wages can be calculated. They did present summary charts relative to each Claimant that provided some partial information as to the dates and shifts worked, and house fees paid by the Claimants. Claimants, however, challenged their accuracy and Respondents admitted that these summary charts were incomplete and inaccurate, at least in some respects. Claimants likewise kept no records that would assist in this inquiry. In such situations, the law is clear that Claimants may carry their burden of proof as to the number of shifts and hours worked (and fees/tip-outs paid as discussed more fully below) by "just and reasonable inference". With such a showing, the burden then shifts to the Respondents to rebut Claimants' showing.

Here, Claimants rely almost exclusively on their recollection as to the time periods and number of shifts and hours they worked at Flashers within the statute of limitations. While reasonable estimates of days/shifts/hours worked can provide a basis for a just and reasonable inference relative to a damages determination, speculation and testimony that lacks credibility cannot.

At the hearing, Ms. Lance credibly testified that she worked at Flashers between June and November 2013 and that her recollection was that during that period she worked approximately 25 shifts with each shift on average being approximately 7 hours—a total of 175 hours. Flashers summary of records with respect to Ms. Lance only showed her having worked 11 shifts with a total of 76.62 hours. However, as noted, Respondents' records were less than complete; and certainly do not comport with either the FLSA recordkeeping requirements or the compliance program signed off on by the DOL in 1993. I credit Ms. Lance's testimony and find that she worked a total of 175 hours.

Ms. Ahmed testified that she began work with some interruptions at Flashers as early as April 2010 and left in 2013. While making various contentions at various times as to the number of days and hours she spent working at Flashers, at the hearing, she testified without any supporting evidence, to have worked 4 - 5 seven hour shifts each week during the 2010 through 2013 period. Specifically, she contends that she worked roughly 350 seven hour shifts for a total of 2450 hours during the relevant period. As noted, she relies solely on her recollection in making that estimate. Flashers' records show a total of 164 shifts and 1312 hours.

Notably, the club manager and sometimes house mother, testified on behalf of the club, and her testimony is credited in substantial part, relative to Ms. Ahmed's work days and hours. She testified that Ms. Ahmed's estimates were substantially overstated and that she believed Flasher's records more accurately reflected the time period and days worked by Ms. Ahmed at the club.

Based on the record as a whole I find that in some meaningful measure, Ms. Ahmed's recollection is flawed, lacking in consistency and credibility, and in some instances no more than just speculation. However, Respondents' records are, as noted, incomplete and under-inclusive as to the days, shifts and hours Ms. Ahmed worked. Accordingly, I find that Ms. Ahmed worked 225 seven hour (on average) shifts for a total of 1575 hours during the relevant period.

Thus, in respect of the minimum wage claims of the Claimants, I find that the minimum wage damages are as follows:

| | | | |
|---|---|---|---|
| For Ms. Lance: | 175 hours x $7.25 | = | $ 1,268.75 |
| For Ms. Ahmed: | 1575 hours x. $7.25 | = | $11,418.75 |

### House Fees and Tip-outs

Claimants also seek the return of "house fees" and tip-outs to the DJs and the housemother. The parties are in dispute over whether the tip-outs are voluntary or mandatory and the amount of house fees paid. As to the tip-outs, if voluntary, then they would be just that, voluntary tips that are not recoupable as damages. If mandatory, then they are recoverable damages, for to find otherwise would give rise to a shortfall in respect of the minimum wage obligations and a violation of FLSA's Anti-Kickback regulations 29 U.S.C. § 531.35.

Both Claimants testified (although not without some hedging) that tip-outs were *de facto*, if not *de jure,* mandatory. Respondents did not credibly rebut their testimony. I find that the tip-out payments were mandatory. Thus the issue is how much on average was paid in tip-outs per day work.

-4-

20704596v.1

Again, the testimony is far from conclusive, but based upon all of the evidence. I find that on average the housemother was paid $7.00 per day worked and the DJ was paid on average a $15 tip-out -- i.e., a total on average of $22 per day worked at Flashers by these Claimants.

There is no dispute over whether every dancer was obligated to pay a house fee. There's also consistent testimony that the earlier a dancer signed in, the lower the house fee—starting with $15 for the lunchtime sign-in, $20 if the sign-in was after lunchtime, but before 7:00 PM, and $55 for the evening sign-in—with that amount increasing by $10 per hour for arrivals after 7:00 PM. However, it is far from clear that the dancers always paid the house fee.

In this case, Ms. Lance presented evidence supporting her position that she virtually always paid the house fee, but is less than clear what percent of the time she signed in for the lunch shift, the midday shift, or the night shift. While, as noted, Respondents' records are under-inclusive relative to the number of days and shifts worked, they do serve as a reasonable sample for determining when on average Ms. Lance arrived at Flashers for work. These records show that approximately 1/3 of the time she began working for the lunch shift, 1/3 of the time during the midday, and 1/3 of the time for the night shift. That equates to an average of $30 house fee per day worked.

The evidence as to Ms. Ahmed's payment of house fees is less lucid. Based on the Respondents' records (which on this point are not challenged by Ms. Ahmed), she is a night person. She, according to these records, never worked the lunch or midday shift and rarely signed in earlier than 7:00 P M—and often later. However, there is undisputed evidence that Ms. Ahmed at times did not pay at least some part of or all of the house fee for a variety reasons. The Respondents' records, plus the testimony of Ms. Ahmed and Respondents' witnesses, are sufficient to conclude that Ms. Ahmed paid on average $30 in house fees for the nights that she worked at Flashers.

Thus, I find as follows relative to house fees and tip-outs:

For Ms. Lance:
| | | | | |
|---|---|---|---|---|
| Tip-outs | - | 25 shifts @ $22 each | = | $ 550.00 |
| House fees | - | 25 shifts @ $30 each | = | $ 750.00 |
| | | | | $1,300.00 |

For Ms. Ahmed:
| | | | | |
|---|---|---|---|---|
| Tip-outs | - | 225 shifts @ $22 each | = | $ 4,950.00 |
| House fees | - | 225 shifts @ $30 each | = | $ 6,750.00 |
| | | | | $11,700.00 |

For Ms. Lance her unliquidated damages are: = $2,568.75
($1,268.75 + $1,300)

Liquidated damages: = $5,127.50


For Ms. Ahmed her unliquidated damages are: = $23,118.75
(11,418.75 + $11,700)

Liquidated damages: = $46,237.50

-5-

20704596v.1

## Attorney's Fees and Costs

Claimants have requested to submit an application for attorney's fees and costs reasonably and necessarily incurred in the prosecution of this action. The application should be supported by appropriate affidavits. Claimants' application is due on or before fourteen (14) days after the date this Interim Award. Respondents may file a response, which shall be due on or before fourteen (14) days after the service date of Claimants' application. If either party requests an evidentiary hearing on the issue of the appropriate attorney's fees and costs, the Arbitrator will determine whether a hearing is necessary, and if so, will set a date for it. Thereafter, the Arbitrator will issue a Final Award.

This Interim Award of $5,127.50 for Ms. Lance and $46,237.50 for Ms. Ahmed is in full and final resolution of all claims submitted to this arbitration against both Respondents, except Claimants' application for attorney's fees and costs. The Arbitrator will retain jurisdiction of this arbitration, and the American Arbitration Association will keep the case open, until that application is decided.

All claims including all counterclaims not expressly granted herein are hereby denied.

This 21st day of March, 2016.

*Hunter Hughes*
Hunter Hughes, Arbitrator

20704596v.1

**AMERICAN ARBITRATION ASSOCIATION**
**Employment Arbitration Tribunal**

| | |
|---|---|
| Re: 01-15-0003-6576 | Re: 01-15-0003-6917 |
| In the Matter of Arbitration Between: | In the Matter of Arbitration Between |
| KHADEJAH AHMED | ANGIE LANCE |
| Claimant, | Claimant, |
| v. | v. |
| HARRY FREESE and 6420 ROSWELL ROAD, INC. d/b/a FLASHERS, | HARRY FREESE and 6420 ROSWELL ROAD, INC., d/b/a FLASHERS, |
| Respondents. | Respondents. |

**FINAL AWARD-ATTORNEYS' FEES AND EXPENSES**

Before me is Claimants' Petition for attorneys' fees and expenses in the captioned matters. In this Petition, Claimants' counsel, Mr. Miller, seeks a total of $118,300 in fees ($500 per hour for 236.6 hours plus costs and expenses). In support of this Petition Mr. Miller, has attached, *inter alia,* various court decisions approving fees have been sought by Mr. Miller and other well-regarded local counsel, declarations and affidavits of other local counsel, and various filings from this case.

I have carefully reviewed the Petition and attendant documentation (including a line-by-line review of Mr. Miller's time summary entries) as well as Respondent's somewhat parsimonious response to this filing.

Based on that careful review (which took into consideration, among other things, the various "Johnson Factors") and my direct observation of the very capable representation provided by Mr. Miller, I am approving an award of $85,000 in fees, plus expenses of $1,842.94. The reduction from the full amount of fees requested is based upon an hourly rate to $450 per hour, the degree of success in relation to the original demands, the lack of novelty/difficulty of these claims, and the fact that a portion of the work in this matter did not require an experienced litigator such as Mr. Miller. As to this latter item, I note that the only contested issue that was meaningful or novel concerned when the statute


EXHIBIT 2

-2-

of limitations began to run as to Ms. Ahmed and that involved an issue that had already been decided in parallel arbitrations in which Mr. Miller was already engaged.

## **FEE PARAGRAPH**

Accordingly, as authorized by the FLSA, I hereby award Claimants' counsel $85,000 in fees, plus costs and expenses of $1,842.94. Except as expressly provided for herein, each party is to bear its/her own costs and expenses. The compensation and expenses of the arbitrator, totaling $15,705.00, shall be borne as incurred by Respondent. The administrative fees and expenses of the American Arbitration Association, totaling $3,550.00, shall be borne as incurred by the parties.

This 20th day of May 2016.

*Hunter Hughes*
Hunter Hughes, Arbitrator

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| KHADEJAH AHMED, on behalf of herself and all others similarly situated, | * * * * | |
| Plaintiffs, | * * | CIVIL ACTION FILE NO. 1:13-CV-02757-RWS |
| vs | * * | |
| HARRY FREEZE d/b/a Flashers and 6420 Roswell Rd. Inc, | * * | |

### ORDER CONFIRMING ARBITRAL AWARD, DIRECTING ENTRY OF JUDGMENT, AND ASSESSING POST JUDGMENT INTEREST

Plaintiff's Motion to Confirm Arbitration Award, Enter Final Judgment, and Assess Post Judgment Interest, having come before the Court, the same is hereby GRANTED. The Arbitral Awards entered on March 20, 2016 and May 21, 2016, are hereby CONFIRMED. The Clerk is hereby directed to enter final judgment against Defendants Harry Freese and 6420 Roswell Road, Inc., jointly and severally, as follows:

$46,237.50 damages to Khadeejah Ahmed;

$5,217.50 damages to Angie Lance;

$86,842.94 attorney's fees and expenses,

with post-judgment interest at the legal rate.



EXHIBIT 3

SO ORDERED this 18th day of January, 2017.

Honorable Richard W. Story
United States District Judge